## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ROSS M. WOLFE, *et al.*                          :
                                             :
                                             :
      v.                 :      Civil No. CCB-14-1601
                                             :
                                             :
AGV SPORTS GROUP, INC., *et al.*                 :

## <u>MEMORANDUM</u>

Plaintiff Ross M. Wolfe filed this putative class action on behalf of himself and others

against AGV Sports Group, Inc. ("AGV") and its founder and president, Michael Parrotte

(collectively, "defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 201 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code, Lab. & Empl. §

3-401 *et seq.*, the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code, Lab. &

Empl. § 3-501 *et seq.*, and Maryland common law.[1]  Wolfe contends that defendants

misclassified Wolfe and others like him as unpaid interns when they were actually employees

entitled to wages.  Defendants have moved to dismiss Wolfe's complaint for failure to state a

claim.[2]  For the reasons stated below, defendants' motions will be denied.

## BACKGROUND

Wolfe's complaint alleges the following facts.  AGV is a company based in

Buckeystown, Maryland, that designs, develops, and produces motorcycle safety clothing for the

road race and sportbike markets.  (Compl. ¶ 23, ECF No. 1.)  Michael Parrotte is AGV's

founder, president, and sole paid employee.  (Compl. ¶¶ 15-16.)  AGV has an "intern program"

that it advertises throughout the nation and globe, and for which Parrotte interviews, hires, and

---

[1] Wolfe later voluntarily dismissed his common law unjust enrichment claim.  (*See* Pl.'s Opp'n 2 n.3, ECF No. 16.)
[2] Defendants filed their motions to dismiss separately, but they retain the same counsel and the motions' substance is practically identical.

supervises interns.  (Compl. ¶ 3, 16, 24.)  AGV has a policy of classifying the "significant

majority" of its program participants as "Unpaid Interns."  (Compl. ¶ 1.)  Accordingly, AGV

pays no wages to them.  (Compl. ¶ 1.)  Yet AGV used these unpaid interns to perform AGV's

core business functions, including: sales and marketing, fashion design, graphic arts, information

technology, legal, management, social networking, supply chain management, web development,

and video production—all of which are functions typically performed by regular employees.

(Compl. ¶ 6.)  Indeed, because AGV has no paid employees other than Parrotte, "absent [the]

Unpaid Interns, AGV would have no day-to-day business operations . . . ."  (Compl. ¶ 7.)  This

intern program is, in other words, a "sham" intended to circumvent federal and state wage and

hour laws.  (Compl. ¶¶ 3-4.)

Wolfe worked as one of AGV's unpaid interns from approximately May 15, 2012, to

approximately July 2012.  (Compl. ¶ 4.)  During that time, Wolfe worked in AGV's law

department, where he logged 28 or more hours per week.  (Compl. ¶ 14.)  Wolfe's job

responsibilities included performing document review, conducting research, and crafting

deposition questions—all in connection with a lawsuit in which AGV was a plaintiff.  (Compl. ¶

33.)  Wolfe neither reported to, nor received training from, any supervising attorney while

working in the law department.  (Compl. ¶ 35.)

Wolfe was not AGV's only unpaid intern—there were at least fifty others.  (Compl. ¶

49.)  The story for them was the same: instead of receiving academic or vocational training, these

interns were responsible for AGV's daily operations.  (Compl. ¶ 28.)  In other words, the unpaid

interns carried out tasks directly related to, and primarily benefiting, AGV and its day-to-day

operations.  (Compl. ¶ 37.)  For example, interns in the video department created promotional

videos to market AGV's products, while other interns carried out search engine optimization to

increase AGV's online presence.  (Compl. ¶ 38.)  Had Wolfe and the other unpaid interns not

done their work, AGV would have had to hire actual employees.  (Compl. ¶ 40.)

AGV and Parrotte carried out this practice in willful violation of both federal and state

labor laws.  (Compl. ¶ 41.)  Defendants did not make a good faith effort to comply with the

FLSA's minimum wage provisions.  (Compl. ¶ 69.)  As evidence of this willfulness, defendants

did not keep accurate or adequate records of the hours worked by Wolfe and the other interns.

(Compl. ¶ 43.)  Moreover, AGV failed to post required notices under the FLSA.  (Compl. ¶ 44.)

Wolfe filed this lawsuit on May 15, 2014.  Defendants have filed motions to dismiss.

## ANALYSIS

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled

allegations of the complaint as true," and "construe the facts and reasonable inferences derived

therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States*, 120 F.3d 472, 474

(4th Cir. 1997).  "Even though the requirements for pleading a proper complaint are substantially

aimed at assuring that the defendant be given adequate notice of the nature of a claim being

made against him, they also provide criteria for defining issues for trial and for early disposition

of inappropriate complaints."  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  "The

mere recital of elements of a cause of action, supported only by conclusory statements, is not

sufficient to survive a motion made pursuant to Rule 12(b)(6)."  *Walters v. McMahen*, 684 F.3d

435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To survive a

motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief

above the speculative level on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal

citations omitted).  "[A] plaintiff need not 'forecast' evidence sufficient to prove the elements of

the claim.  However, the complaint must allege sufficient facts to establish those elements . . . .

[and] advance the plaintiff's claim 'across the line from conceivable to plausible.'"  *Walters*, 684

F.3d at 439 (citations omitted) (quoting *Twombly*, 550 U.S. at 570).

## I.  FLSA Claim

Wolfe alleges facts that plausibly support his claim for relief under the FLSA.  Though

both sides focus their briefing on whether Wolfe meets the definition of an "unpaid intern" under

guidance provided by the Wage and Hour Division of the U.S. Department of Labor ("DOL"),

*see* Wage and Hour Div., U.S. Dep't of Labor, Fact Sheet #71: Internship Programs Under The

Fair Labor Standards Act (Apr. 2010), http://www. dol.gov/whd/regs/compliance/whdfs71.pdf

("Fact Sheet #71"), that focus is too limited.  Analysis exclusively under Fact Sheet #71 would

not be dispositive because that fact sheet is merely persuasive authority.  *See Christensen v.*

*Harris Cnty.*, 529 U.S. 576, 587 (2000) (noting that agency interpretations in opinion letters,

policy statements, agency manuals, and enforcement guidelines "lack the force of law" and are

only "entitled to respect" under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), and not

"*Chevron*-style deference"); *accord Reich v. Parker Fire Prot. Dist.*, 992 F.2d 1023, 1027 (10th

Cir. 1993) (declining to grant *Chevron* deference to DOL's six criteria and finding the criteria

"relevant but not conclusive" to analysis of whether trainees were employees).  Moreover, the

fact sheet itself states that its "publication is for general information and is not to be considered

in the same light as official statements of position contained in the regulations."  Fact Sheet #71.

Instead, the dispositive issue here is whether Wolfe was an "employee" of AGV's within

the meaning of the FLSA.  To state his FLSA claim, Wolfe "bear[s] the initial burden of proving

that an employer-employee relationship exists . . . ."  *Benshoff v. City of Virginia Beach*, 180

F.3d 136, 140 (4th Cir. 1999); *see also Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727-

28 (1947) (beginning FLSA inquiry by deciding whether employer-employee relationship existed).  Because the defendants do not deny they were "employers" under the FLSA, all Wolfe must do at this stage is allege facts supporting the inference that he was an "employee" of AGV's.  If so, AGV was required to pay him minimum wage for the time during which AGV employed him.  *See* 29 U.S.C. §§ 206, 215.  The court concludes that Wolfe has met his burden.

The FLSA defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  And an individual is employed when he is "suffer[ed] or permit[ted] to work" by his employer.  29 U.S.C. § 203(g).  Because Congress intended the FLSA to "provide a remedy to *employees* for their employers' wage and hour violations[,]" *Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 890 (D. Md. 2011) (emphasis added), its definition of "employ" has "striking breadth[,]" *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (citing *Rutherford Food Corp.*, 331 U.S. at 728).  But that definition has limits.  Relevant here, the Supreme Court has held that trainees, under certain circumstances, are not "employees" during their training period.  *See Walling v. Portland Terminal Co.*, 330 U.S. 148, 153 (1947).  Although the circuits differ in their understanding of *Portland Terminal*'s impact on the employee analysis,[3] the Fourth Circuit unequivocally applies a "primary beneficiary" test.  *See McLaughlin v. Ensley*, 877 F.2d 1207, 1209 (4th Cir. 1989).  This test considers "whether the employee or the employer is the primary beneficiary of the trainees' labor."  *Id.*  The focus is on "the nature of the training experience"—what interns do, what they learn, and what guidance they receive.  *Id.* at 1210.  Notably, the Fourth Circuit in *Ensley* expressly declined to rely on the

---

[3] As examples, the Fifth Circuit conducts a "balancing analysis" that considers the "relative benefits" of the putative employee's work, *see Donovan v. American Airlines, Inc.*, 686 F.2d 267, 272 (5th Cir. 1982), while the Sixth Circuit asks whether the employee in a "learning or training situation" is the "primary beneficiary of the work performed[,]" *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 525 (6th Cir. 2011).

predecessor to the test outlined in Fact Sheet #71,[4] choosing to rely, instead, on the "clear

precedent" and "principles stated in" *Wirtz v. Wardlaw*, 339 F.2d 785 (4th Cir. 1964), and

*Isaacson v. Penn Cmty. Servs., Inc.*, 450 F.2d 1306 (1971). *Ensley*, 877 F.2d at 1209 n.2.

Accordingly, Fact Sheet #71 does not control the determination here.[5]

Here, Wolfe has pled more than enough facts that, taken as true, show defendants were

the primary beneficiaries of his labor.[6]  Wolfe alleges AGV conducted its entire business almost

exclusively through the work of its "interns."  These interns completed tasks in every phase of

AGV's business, from marketing to supply chain management to information technology.  In the

law department, Wolfe alleges he worked on assignments that directly corresponded to and

advanced AGV's litigation interests, rather than Wolfe's educational and career interests.

Indeed, the overall atmosphere of AGV's internship program was anything but educational; it

was entirely businesslike.  That Wolfe did not receive much, if any, supervision over his work

bolsters this point.  In short, Wolfe pleads facts suggesting quite clearly that AGV and Parrotte—

and not Wolfe—were the primary beneficiaries of Wolfe's work.  Given the facts Wolfe has

pled, it is entirely plausible that defendants have violated the FLSA.  Accordingly, Wolfe's

FLSA claim survives defendants' motions to dismiss.

## II.  FLSA Limitations Period

Wolfe also alleges facts that plausibly support his contention that defendants willfully

violated the FLSA.  Accordingly, the court cannot, at this time, dismiss the possibility that a

---

[4] At the time, the six factors in Fact Sheet #71 existed in a DOL manual using substantially similar language.
[5] Even to the extent that Fact Sheet #71 may be relevant guidance, Wolfe has pled enough to show that the circumstances surrounding his employment did not satisfy the six-part test outlined by the DOL.  For example, it appears from the allegations that the defendants derived an "immediate advantage" from the interns' activities and that the interns "displace[d] regular employees."  Fact Sheet #71.
[6] Contrary to defendants' assertions, (*see* AGV's Reply 7, ECF No. 17), Wolfe need not allege facts that, if true, would disprove the six elements outlined in Fact Sheet #71.

three-year limitations period will apply.[7]  Typically, claims for violations of the FLSA have a

two-year limitations period.  29 U.S.C. § 255(a).  For claims "arising out of a willful violation,"

however, a three-year limitations period applies.  *Id.*  In *McLaughlin v. Richland Shoe Co.*, the

Supreme Court held that in order to show willfulness under section 255(a) of the FLSA, a

plaintiff must show that the employer "either knew or showed reckless disregard for the matter

of whether its conduct was prohibited by the [FLSA]."  486 U.S. 128, 133 (1988).  The Court

noted that "willful" is considered synonymous with "deliberate" and "intentional."  *Id.*  In other

words, "[m]ere negligence on the part of the employer with regard to compliance with the FLSA

is not sufficient to prove willfulness."  *Gionfriddo*, 769 F. Supp. 2d at 890 (citing *Richland Shoe

Co.*, 486 U.S. at 133).

Though this standard is high, Wolfe has pled enough to meet it.  Wolfe alleges a bevy of

facts that make plausible an inference of reckless disregard.  Wolfe alleges that "AGV only has

one paid full-time employee" and that, in fact, "AGV's entire workforce is comprised of Unpaid

Interns."  (Compl. ¶ 5-6.)  And Wolfe claims that AGV hired "over fifty individuals" under

similar or identical circumstances.  (Compl. ¶ 49.)  Finally, Wolfe alleges that he and the other

unpaid interns "performed all the core business functions of AVG," including "Marketing,

Supply Chain, Law, Graphics, Video, Fashion, Management, Social Media and Immigration."

(Compl. ¶ 31.)  These factual allegations, viewed together, make plausible the inference that

defendants skirted the FLSA's requirements by willfully misclassifying its employees as interns

so that it could obtain and exploit a large labor force to do its work free of charge.  A company

does not appear to be merely negligent when it operates a business with the help of only a single

---

[7] The limitations period does not affect Wolfe's personal claim because his complaint alleges that he worked for
defendants only within the shorter two-year limitations period.  But the limitations period matters because it could
affect the number of, and the amount of back wages owed to, class members.

paid employee—but dozens of interns—to carry out the various facets of its business.[8]
Accordingly, a three-year limitations period may apply.

### III. Maryland Wage and Hour Law Claim

The MWHL is the "state parallel" to the FLSA, and the requirements for pleading a claim under the MWHL "mirror those of the federal law." *Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 242 (D. Md. 2012) (citing *Turner v. Human Genome Sci., Inc.*, 292 F. Supp. 2d 738, 744 (D. Md. 2003)). As such, a plaintiff successfully pleads an MWHL claim by adequately pleading an FLSA claim. *Id.* Because Wolfe has sufficiently alleged an FLSA violation, his MWHL claim survives, too.

### IV. Maryland Wage Payment and Collection Law Claim

Wolfe has also sufficiently stated his MWPCL claim. The MWPCL "requires an employer to pay its employees regularly while employed, and in full at the termination of employment." *Peters v. Early Healthcare Giver, Inc.*, 97 A.3d 621, 625 (Md. 2014) (citing MWPCL). Although prior cases interpreted the MWPCL as excluding claims "based on [plaintiff's] entitlement to the wages themselves[,]"*McLaughlin v. Murphy*, 372 F. Supp. 2d 465, 475 (D. Md. 2004), on grounds that such claims properly fell within the FLSA or the MWHL, *see id.*; *Williams v. Maryland Office Relocators*, 485 F. Supp. 2d 616, 622 (D. Md. 2007) ("Plaintiff's [overtime] claim is governed by the FLSA and the MWHL, not the MWPCL."), Maryland courts have subsequently clarified that the MWPCL "not only concerns the timing of payments, but any dispute over entitlement of wages." *Peters*, 97 A.3d at 625; *see also Marshall v. Safeway, Inc.*, 88 A.3d 735, 746 (Md. 2014) (noting that MWPCL permits private cause of

---

[8] Wolfe's complaint alleges additional facts that, viewed alone, might point only to negligence (i.e., defendants did not make a good faith effort to comply with the FLSA, failed to keep accurate or adequate records of hours worked by its interns, and failed to post FLSA notices). Considered in their totality, and in conjunction with Wolfe's other allegations, however, they bolster a finding of willfulness.

action against employers who fail to pay wages, and "not just if the payment is late").  Here,

Wolfe has alleged that he was an employee within the MWPCL's meaning and that he was

entitled to timely payment of wages, which Wolfe alleges defendants have not provided.  Wolfe

states a proper claim.  Accordingly, Wolfe's MWPCL claim survives.

## CONCLUSION

For the reasons stated above, defendants' motions to dismiss will be denied.

A separate Order follows.


<u>November 3, 2014</u>                          _____/S/_____
          Date                                            Catherine C. Blake
                                                          United States District Judge